CallWave is a licensed audio and video production company.   This is case number 18-1124, Broadsoft Inc. v. CallWave Communications LLC. Mr. Bellinger, when you're ready. Good morning, Your Honor. May it please the Court, we appeal from three fundamental errors in the lower court's decision. The first error relates to a misapplication of the Van Muir exception, where the Court found the claims invalid as anticipated, while relieving the challenger of their burden to prove invalidity on an element-by-element basis. The second error relates to finding what the parties have referred to and the Court refers to as a single number outcall claims as not patent eligible under Section 101. The third error is a similar finding of lack of patent eligibility for what the parties and the Court refer to as the sequential ring claims. I want to start with the misapplication of the Van Muir exception under Section 101, and within that we believe there are two fundamental errors. The first fundamental error is it was undisputed below that the product accused of infringement was released after the critical date. In our view, the Van Muir exception applies narrowly to where the patentee actually accuses a product and the defendant or the accused infringer is able to prove that that exact product was on sale prior to the critical date. There was no evidence of that here. Rather, the Court shifted the burden to the patentee and looked for proof of substantial differences between the product that was accused of infringement and the product that was previously sold, which is undisputed. Your position is that the district court should have compared the prior to the claims as opposed to comparing the prior to the accused product. Is that correct? Correct. And further, that error was compounded because the challenger never compared the prior product to the accused product and did not present substantial evidence that the prior product was identical or the same as the accused product. Had they done so, would that have been sufficient? It would have been sufficient if they proved by clear and convincing evidence that they were identical, and that's the Van Muir exception. So if it was a mere change in a branding or trade name and they could have proven they were material identical, that would have fallen under the Van Muir exception. That was not the case here and is not the case here. I'm hopeful that you're raising that issue first because it seems to me we're in 101 land again, but with a different kind of invention, and you've got real problems there. If I may, I'll briefly address the Van Muir exception and I'll move to the 101 issue. So in summary, the primary error was relieving the challenger of their burden to prove invalidity on an element-by-element basis. The judge, in his opinion, without citation, stated that the patentee had acknowledged that the accused product was merely an updated version of the prior art. There was no such admission that was strenuously disputed below. He also made an incorrect finding that our expert, who had compared the accused product to the alleged prior art version, had not identified differences. I'd point you in the record to Appendix 5111, Paragraph 12, and 5113, Paragraph 21. That's our expert's declaration where he compared the source code for the accused product to the source code for the alleged prior art and found that the critical piece of source code, the source code that was inserting the caller identification, substituting the phone number for a virtual telephone number in the caller identification field, had a copyright date of 2009, well after the critical piece. So we believe that was a fundamental error, that there was evidence in the record that the two products were materially different, and yet he didn't properly credit that evidence on summary judgment. Regarding 101, Your Honor, starting with the single-number outcall claims, the judge characterized those claims as directed to a problem of human unavailability, and we would respectfully disagree. The patent and the claims are directed to a problem with then-existing telecommunications and telephone systems and propose a novel organization of known components to provide new and improved functionality for a call processing system. What do you see as the novel organization? I mean, definitely the claim is wrong and has a lot of elements, but it seems to be that it's really directed to using when you have two different phones, yet it provides the same call as the two. Yes? So how is this, how do we understand what you're referring to as it being a new, directed to be a new organization? Sure, thank you, Your Honor. So what the claim is directed to is interposing what's claimed as a call processing system in between the calling party and the called party, storing within that call processing system phone numbers for the subscriber to the service. So, for example, you would store your cell phone number and your office number at the call processing system, and rather than from your cell phone, which has its own unique telephone number directly calling the person you wanted to call, you instead, as is claimed, you participate in the call of the call processing system. You call that call processing system. That call processing system recognizes, because you've already programmed your cell phone number into it, that you're a subscriber. Could the call processing system be the other phone, or be something in the other phone? No. That was construed by the court to be a series of servers that are capable of screening incoming calls based on predefined rules. So, and this is illustrated in Figure 31 of the Patent, Your Honor, where it illustrates a novel arrangement. In that figure, it's the soft switch is the call processing system, and rather than making a, and if you look at Figure 31, the fixed phone 506 in this example, rather than just dialing directly to the caller 505, as would have been conventional, the call goes to the soft switch, and that would then, the soft switch, the call processing system, would bridge that call to the caller. That would allow, if you wanted to continue the call from your desk phone or your work phone or your mobile phone, you could simply press a key and have the soft switch switch the phone, in this example, from the fixed phone, your desk phone in this example, to your mobile phone without dropping the call. So there's no record evidence that the placement of a call processing system or a soft switch in this arrangement, where the soft switch is replacing the fixed phone number in this example or the mobile phone number in this example with a virtual telephone number, that that was conventional or not. So that's what I'm pointing to, and that is captured in the claims. The virtual telephone number is in claim, it's specifically claimed in Claim 16, which we had contested, and this is another, we believe, an era of burden shifting. We believe it was a challenger's burden to show that Claim 1 of the 591 patent was representative, but Claim 16 specifically calls out the virtual telephone number as an additional feature. But the novel arrangement, in our view, is these claims do not deal with human unavailability. There is a statement regarding human unavailability in the specification, but that's talking about when a conventional telephone system, if you received a call, the applicants point out a problem of if the call is not switched to another device, it will go to voicemail, but their proposed solution is not just directed to a general concept, it's to a specific technical improvement in the call flow by introducing this call processing system in the middle of the call flow. And that, what the judge identifies, is directed to the different set of claims, the sequential ring claims, not the single number out call claims. So even where he, what he points to as the abstract concept of human unavailability is not a description of the asserted claims, sorry, the asserted single number out call claims, that's directed to different claims. And so I think that's, so the key error for the Section 101, we believe is the misapplication, so in Step 1, we do not believe the claims are directed to an abstract idea. They're directed to a concrete telephone system. If the court were to reach Step 2 and find that the claims were directed to an abstract idea, we believe the court engaged in an improper fact-finding exercise, finding that the claimed accommodation was merely conventional, and hypothesizing about a, what a assistant may have done in the past without pointing to any record evidence that anyone had actually acted in that manner, or that if someone had acted in that manner, it would have matched the claim language. So we believe that in the second step of the ALICE analysis, the district court erred in not, in making fact findings and hypothesizing what might have been possible without actually referring to record evidence to support those findings. But we do believe that this case is closest to the visual memory case, where while the claims and the specification do discuss arrangements of conventional components, they're not claiming an abstract idea to which the computer or conventional components are merely ancillary. They're, in fact, describing and claiming a system itself, and that system is practical. The fact that it has advantages to human beings does not render it patent ineligible. The question for the court is, are the claims merely directed to an abstract idea? Is the invention merely directed to an abstract idea? And here it is not. It's directed to a functional system. So in visual memory, the claims were directed to something that improved the operation of the computer itself, specifically the memory. What is the improvement to the network itself here? Sure. The improvement is rather than requiring someone to call from their cell phone and having their caller ID published as their cell phone number, the improvement is if you have a common virtual telephone number, a common caller ID. But what if someone were to say that's the abstract idea itself? Where is the improvement to this computer system, setting the abstract idea aside? Oh, sure. So the computer system, based on interposing the call processing system between the cell phone and the party being called and programming that call processing system in the claimed way, that call processing system can intercept the call and provide additional functionality that was not available in conventional telephones. Meaning if the party that you called called you back, the call processing system could control where the call went to based on programming that wasn't available in conventional telephone systems. The conventional telephone systems at the time, they were a one-to-one relationship between the called party and the calling party. This provides an improvement. It's an improvement where you can use multiple physical phone terminals and publish the same number so that you can control where and how and when a person can call you back. So the technical improvement is putting that call processing system in a particular place in the call flow, and there's an extensive description and specification of how the call flows improve that performance of the telephone system. Let's hear from the other side, and we'll save you a little time. Thank you. Mr. Graves. Good morning, and may it please the Court. To prevail on this appeal, appellant must first secure a reversal of the judgment of unpatentability under Section 101, which applies to all of the asserted claims. And second, with respect further to the 11 single-number out-call claims, must secure a reversal of the judgment of anticipation of those claims based on the accused Broadworks software. With the record, evidence, and law, we submit compelled affirmance of the district court's ruling in all respects. I'd like to start with the 101 issues. Appellant, in its briefing in here this morning, has had little, if anything, to say about the actual claim language at issue here, but I submit that the language of the claims tells the story of patent ineligibility under 101. These claims are quite simple claims that are directed to methods of organizing human activity, and they are written in purely functional result-oriented terms, much like the claims that this Court found to be patent ineligible in cases such as Affinity Labs, electric power, and in-ray TLI communications. Now, the single-number out-call claims are directed to the abstract idea of identifying a caller using a single representative telephone number or telephone address. As the district court correctly found, the single-number out-call claims at their core involve storing data in a database, looking up that data from the database in response to the initiation of a phone call, and inserting at least a portion of that data in the already existing caller ID field. How do you respond to CallWave's argument that it's the organization of the elements in the claim that makes this something more, something different, and in particular the use of this call processing system to be the thing that is causing the function, if you will, of changing the phone number, that somehow that's something that is something more? How do you respond to that? I don't believe the opponent has specifically articulated clearly what is unconventional and innovative or inventive about an arrangement of the components here. Below, in the summary judgment and judgment on the pleadings hearing, the district court asked counsel for the patent owner to identify what it is that CallWave believed was nonconventional, inventive here. Counsel admitted during oral argument that the communications protocols at issue were well-known technologies. That's at appendix 5187, page 30, lines 1 through 6. Appellant also conceded below that the hardware utilized was known at the time. That's at appendix 5188, page 34, 7 to 8. What Appellant argued is inventive is the combination of different hardware elements and then programming the interaction of those different hardware elements to provide something novel. But the claims in the specification say nothing about any particular inventive combination of the known admittedly conventional hardware elements or about particular software programming to achieve any technological improvement to the call processing system itself. So this case is nothing like the post-Alice cases cited in the appellant's briefs like Enfish, McRow, Baskin, and Amdocs, where the patents specifically disclosed and claimed technological solutions to technological problems. It's not the custom, for better or for worse, to require programming details, is it, in the specification? It's not required. But where the appellant contends that there was the special sauce essentially was software programming, I believe it's incumbent on the patent owner to disclose that, and the claims themselves must recite what the inventive concept is. There's no hook in the specification here that describes a particular technical problem to be solved that was overcome by a particular combination of elements or a particular call processing soft switch. So what was missing? In your view, what additional information should have been included? Well, I don't think there was anything inventive here whatsoever, anything that would qualify as an inventive concept under Step 2. So I'm not sure what else the patent owner could have done, but to the extent they're asserting now that there is some sort of technological problem that was solved by an inventive combination of elements and software programming, it's incumbent on them to identify where in the patent that's actually disclosed. They really can't do it. And the problem that's identified in the patent as one to be solved, similar to what the judge below said about a human unavailability problem, the problem recited in the specification to be solved is supposedly the frustration and dissatisfaction of customers who are unable to connect with someone they're calling. That can lead to lost sales. So the specification says this problem gets solved in the case of the signal number out call claims by inserting into the caller ID field a representative phone number so the call party can recognize who's calling instead of, you know, it might be a spam robocaller and you don't want to answer the call. But if you see the representative telephone number of a colleague of yours or a client, you'll pick it up. In the case of the sequential ring claims, the alleged problem of customer dissatisfaction is supposedly solved because the system will serially call one phone number after another associated with a particular subscriber until the subscriber picks up the call or all the list of numbers is exhausted. That's purely a business problem. It's not a technical problem. And there's nothing in the claims of the specification that talk about a technical problem that gets solved by a particular inventive concept. So, for example, if the call processing, somehow there was something unique and different they had to do to change the call processing so that it could implement this function, is that the kind of thing you're referring to? I mean, you said there's nothing in the specification. I'm asking you what kind of thing do you think we should be looking for? I mean, it's kind of hard to say there's nothing. What kind of thing would be different? Do you have an idea? Well, here, as Appellant admitted below, everything disclosed in the specification about the hardware components and the particular communications technology was known, right? So what they're saying now is there's something about the combination of these known elements that provides an inventive concept. But they haven't identified what that is because it isn't there. And I can't imagine what it is they could have disclosed that would give credence to the notion that they'd come up with a patent-eligible invention here, Your Honor. Unless there are further questions on 101, I'll move on to the 102 issues. I did want to note first, before I move on, that on the issue of what the problem to be solved was, not being a technical problem, Appellant stated on page 29 of its reply brief, quote, the specifications, however, teach that the S&O claims improve the telecom experience for subscribers with multiple communication devices, close quote. But an improved experience for users does not equate to a technological improvement to the call processing system itself. On the contrary, the claim call processing system here achieves these benefits to users simply by using admittedly known conventional computer telephony tools. So in that regard, this case is analogous to cases such as InRay TLI and content extraction, which involve claims directed to generic computer functions such as storing, retrieving, and extracting data in conventional ways without any claimed technological improvement. Now I'll move on to the 102 issues briefly in my remaining time. Regarding summary judgment of anticipation of the single number outcall claims based on the BroadWorks software, the district court was correct in concluding that there's no genuine issue of material fact to defeat summary judgment. What about the argument that the methodology that the district court used was incorrect? Well, as I understand the argument, it's that the district court simply relied on the VanMoor exception. But in fact here, in addition to our pointing out that throughout the case, the patent owner had accused BroadWorks generally, and in particular, all single number outcall functionality within BroadWorks of meeting these claims, we also put on essentially a traditional anticipation case. We put on, including through our expert, detailed analysis with claim charts comparing the asserted claims to the prior art versions of BroadWorks showing... What do we make of the fact that, maybe I'm missing it, but I didn't see that sort of analysis undertaken by the district court in this case, even if you presented it. Right. The district court looked at the material identity question. And here it's important to understand, while the appellant's briefing characterizes BroadWorks Anywhere as some sort of different product, BroadWorks Any... Just going back to this other question, how does your presentation of an alternative correct technology, a methodology for analyzing the 102 issue, fix the district court's methodology for analyzing the 102 issue if we think there's a problem with it? First, I don't think it was an incorrect methodology as we explain in our brief. But assuming it is, this court has before it the record to affirm the anticipation finding, nonetheless, based on the extensive record evidence that BroadSoft submitted that included comparing the asserted claims to prior art versions of BroadWorks that had these single-number out-call capabilities. In particular, I would direct your honors to the release-aid demonstration videos that BroadSoft's expert, Dr. Eldering, prepared. BroadSoft was able to put together a working call processing system driven by release-aid of BroadWorks, which came out no later than January of 2003, more than a year and a half before the critical date. Our expert, Dr. Eldering, demoed that system and showed how it provided all of the aspects of the limitations of the asserted claims. He submitted the videos, and they're in the record here in the appendix. We provided DVD copies, and he provided a summary judgment declaration where he walked through his analysis of that demonstration video. Tellingly, first, after unsuccessfully moving the district court to strike the evidence from Dr. Eldering of that prior art system and its capabilities, the plaintiff here, the patent owner, chose not to send its technical expert, Dr. Leak-Antoni, to inspect that system. And the reason is clear. They knew what he would find in that prior art system, and they didn't want him subjected to questioning under oath and deposition from me about the capabilities of that system. They weren't interested in discovering the truth about the prior art BroadWorks releases. Instead, they had their expert not look at the system and then rankly speculate that it may not be authentic, and the district court appropriately rejected that argument. They provided no evidence whatsoever that it was inauthentic. We had Mr. Samuel Hoffpower provide a declaration attesting to how the system was put together and the authenticity of the Release 8 software. We had our expert demonstrate the system and go claim element by claim element, comparing it to the asserted claims, and they offered nothing in response other than, well, maybe this isn't the real deal, and maybe it wasn't actually released to the public. But we had release after release after Release 8 up through Release 11.1 also being prior art to these inventions, and we submitted evidence again through Mr. Hoffpower, who is the head of R&D at BroadSoft and helped develop BroadWorks, that these releases all contain the same single number out-call functionality that was shown in this Release 8 demonstration video prepared by our expert. So at the end of the day, the way this appellant challenges the 102 finding is by speculating, by asserting that, well, maybe these call processing functionalities that are in Release 8 were removed before the release of the version that they actually now want to accuse after the critical date. But, in fact, what they did here was they accused prior art functionalities within BroadWorks. We provided them with the evidence of that. They tried to strike that evidence from the record, and the district court rejected that. And then they changed their tune and said, oh, we're only accusing this thing called BroadWorks Anywhere. But Mr. Hoffpower testified, and this is unrefuted, that the single number out-call functionalities within BroadWorks Anywhere are based on the same single number out-call functionalities that were in prior art versions of BroadWorks, including through something called Remote Office and Shared Call Appearance. So in sum, Your Honors. Are you aware of any cases in which the Van Moor test or methodology has been used in the way that the district court used it here, where there was the accused device and prior art were not the same thing? Well, here, what they ended up trying to accuse, just Anywhere, as I said under the evidence, it is the same thing from a single number out-call perspective. From one perspective, but they're different products, right? Understood. Just answer my question. But we did. You understand my question, and I just want a yes or a no. Are you aware of any cases where there's some alleged difference between the accused device and what is determined to be the prior art, and the district court relied on the Van Moor line of pieces? Yes. We cited in our brief, for example, some district court cases that looked at the material identity question, including the Cummings v. Adidas case that's cited at pages 45, 46, 47, and 50 of our brief. And we talked about that case extensively on those pages. So that's an example of a case. I see that my time is up, so let's take further questions, and I'll take a seat. Is that okay? Thank you. Thank you. Thank you. Thank you. If I may address the 101 issues first, and I want to point you to some specific references in the specification to counter counsel's argument that there's no discussion of either programming or anything, any specific description of how the call processing system operates. I did point earlier to figure 31. I point specifically to column 67, line 29, through column 68, line 22, where there is a detailed and specific description of how the call processing system, described in the figure as the soft switch, is interposed in an unconventional way, such that where a conventional system, someone trying to call from their cell phone, would call directly to the call party, instead there is a description of a unique call flow that is specifically set forth where the caller calls instead to the soft switch, and the soft switch, based on stored information and specific programming, completes the call in a particular way that provides a technical improvement to prior telephone systems. So there is a detailed description of that, column 67, 29, to column 68, line 22. There's also a detailed and specific description of how one example of how the caller ID is substituted in that scenario at column 66, lines 20 to 30. Council incorrectly stated as well that there's no description of software programming. There is an extensive description, the specification is 70-something columns long. And I'll point your honors to only one example. If you look at column 33, line 1, through column 34, line 51, there is a detailed description of variables and uses of variables in order to allow the call processing system that's claimed to perform the claimed functionality in a novel way. So if, as Council said, to move from an abstract idea to something concrete and tangible, he indicated that some description of software functionality would be sufficient. There is extensive description of software functionality and how the call processing system is programmed contained in the specification, including the level of detail of variable names, such as the out-call timing cache at line 22, a port manager, and it goes on. So I would take issue with that as a response to the novel arrangement of the call processing system being used in a unique way. Regarding the Van Moore exception and the district court's application of that, there are several things that I wanted to take issue with. First, Council's implication that by sending one expert instead of a different expert, that's somehow an admission that the prior art was identical to the accused product. This is a procedurally unique situation where this invalidity defense was raised, I believe it was two and a half years after the deadline for invalidity, after fact discovery had concluded, after all expert discovery was concluded, and we were given only a couple days to perform the inspection at which one of our experts was unavailable. The expert who did inspect the system did put in a declaration describing in detail how the source code for the alleged prior art was materially different and how the challenger hadn't met their burden. Dr. Luke and Tony, who was our second expert, provided a detailed declaration refuting the element-by-element analysis, and there's nothing on the record suggesting that the district court credited their expert, nor should this panel on appeal credit their expert over our expert. There's no finding of an element-by-element comparison, and we believe that alone is reversible error. I would point to your specific question regarding case law. I would point the panel to the Zenith v. PDI case. This is 5-22, Feb. 3, 1348 at 1363. It's a 2008 Federal Circuit opinion. This is six years after Van War, where this court found that mere proof that prior art is identical in all material respects to an allegedly infringing product cannot constitute clear and convincing evidence of invalidity. Anticipation requires a showing that each element of the claim at issue is found in a single prior art reference. So we believe there is controlling case law of this court that's directly contrary to the argument advanced by the patent challenger, and that is that the court can sidestep the requirement of an element-by-element analysis of the prior art using the Van War exception, particularly where there's a material dispute as to whether the product accused of infringement is actually the same as the product that was in the prior art. And I would strongly disagree with the many characterizations of our contentions. There is a common trade name used across products, but from our infringement contentions, which were submitted very early in the case, indeed, a declaratory judgment plaintiff, when opposing a motion to dismiss, specifically identified the broad works anywhere as the accused product. So from the outset of their declaratory judgment case through our infringement contentions, through expert discovery, it was crystal clear that our element-by-element analysis of the claims was only to the broad works anywhere functionality and not to any other alleged prior art products. So unless you have any further questions. Thank you very much. The case is taken under submission.